## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, ex rel. )<br>DEPARTMENT OF TRANSPORTATION )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>SMALL BUSINESS ADMINISTRATION; )<br>CROW REAL ESTATE INVESTMENTS, )<br>LLC, a terminated Oklahoma Limited Liability )<br>Company; CROW ENTERPRISES, LLC, an )<br>Oklahoma Limited Liability Company, d/b/a )<br>Turnpike Chrysler Jeep Dodge; )<br>ARVEST BANK, a Foreign Corporation; )<br>COUNTY TREASURER OF OTTAWA )<br>COUNTY, OKLAHOMA; and SECURITY )<br>BANK )<br>)<br>Defendants. ) | Case No. 09-CV-452-TCK-TLW |

### OPINION AND ORDER

Before the Court is plaintiff's Motion for Civil Contempt and Brief in Support. (Dkt. #202). Plaintiff seeks a ruling that defendants Crow Real Estate Investments, LLC ("Crow Real Estate") and Crow Enterprises, LLC ("Crow Enterprises") (collectively known as "the Crow defendants") are in contempt for their failure to comply with the Court's order to repay the excess Commissioners' award. (Dkt. #193). The Crow defendants filed a response.[1] (Dkt. #220). Plaintiff filed a reply. (Dkt. #228). The Court held an evidentiary hearing on October 17, 2012.

---

[1] Defendant Security Bank holds a recently acquired mortgage on the subject property. However, the property description in the mortgage appears to exclude that portion of the property now subject to this action: "less the part deeded or taken for highway purposes." (Dkt. #214, Exh. C). Security Bank advised the Court on October 17, 2012, that it did not assert an interest in the property taken, but if an award were granted due to damage to the adjacent property, Security Bank might assert an interest. (Dkt. # 242). For this reason, Security Bank was added as a defendant on October 17, 2012.

1

(Dkt. #242). Following the hearing, plaintiff filed a supplemental brief. (Dkt. #244). The Crow defendants then filed a second response countering plaintiff's supplemental brief. (Dkt. #247).

## BACKGROUND INFORMATION

Plaintiff instituted condemnation proceedings on 1.88 acres of the Crow defendants' property in July 2009. (Dkt. #2). The 1.88 acres is part of a 5.16 acre parcel owned by Defendant Crow Real Estate. Defendant Crow Enterprises operates Turnpike Chrysler Jeep Dodge on the parcel. (Dkt. #2). Although plaintiff initially sought to obtain only 1.88 acres, it later amended the complaint to take the entire 5.16-acre parcel. (Dkt. ##2, 37). A panel of three Commissioners appraised the property, in accordance with state statute, and valued the entire parcel at $1,856,506.42, which plaintiff deposited with the Court. (Dkt. #42). The Crow defendants and their lienholders subsequently sought disbursement of those funds, and plaintiff did not object.[2] (Dkt. ##67, 71, 72, 73). The Court ordered the funds to be disbursed on March 29, 2010. (Dkt. #74). The Crow defendants received $1,259,443.70, the amount remaining after the lienholders' liens were satisfied. (Dkt. #74).

Approximately six months after the funds were disbursed, plaintiff sought to amend the complaint a second time to reduce the property to be taken to the original 1.88-acre parcel cited in the original complaint. (Dkt. #101). The Crow defendants initially objected but ultimately consented to the amendment. (Dkt. #118). A panel of three Commissioners subsequently appraised the 1.88-acre parcel and valued the property at $592,766.00. (Dkt. #142).

Plaintiff then sought a return of the difference between the valuation of the 1.88-acre parcel and the 5.16-acre parcel. (Dkt. #152). The Crow defendants and the lienholders opposed plaintiff's motion. (Dkt. ##154, 156, 157). Following hearings on the motion, the Court issued an

---

[2] Defendant Arvest Bank held a mortgage in the amount of $468,040.27 and defendant Small Business Administration held a mortgage in the amount of $129,022.45. (Dkt. #74).

order directing the Crow defendants and the lienholders to repay the excess funds to plaintiff and to deposit the remaining funds with the Court within thirty days of the date of the order. (Dkt. #193). The Crow defendants and defendant Arvest Bank appealed this order to the District Court; those objections were overruled. (Dkt. ##184, 185, 189). The District Court did grant the defendants an extension of time until June 22, 2012, to repay plaintiff and deposit the remaining funds with the Court. (Dkt. #189). The District Court later extended that deadline to August 22, 2012. (Dkt. #192). Defendants Arvest Bank and Small Business Administration complied with the order to repay the funds, but the Crow defendants did not.

On August 23, 2012, plaintiff filed a motion for contempt against the Crow defendants for failure to comply with the Court's order. (Dkt. #202). Plaintiff argued that it had established a *prima facie* case for civil contempt and that defendant could only avoid a finding of contempt by presenting evidence establishing a financial inability to comply with the Court's order. (Dkt. #202). Plaintiff argued that the Crow defendants should be required to present "a full and complete picture of [their] finances in an orderly fashion and with explanation." (Dkt. #202, citing A.V. by Versace, Inc. v. Gianni Versace, 279 F.Supp.2d 341, 346 (S.D.N.Y. 2003)). Plaintiff also argued that, unless the Crow defendants could establish a complete inability to comply with the Court's order, they should be held in contempt for failing to comply, to the extent they were capable of doing so. (Dkt. #202).

The Crow defendants raised three arguments in response. (Dkt. #220). First, the Crow defendants questioned the validity of the Court's order, raising the same arguments that they presented in opposition to the motion seeking return of the excess Commissioners' award. (Dkt. #220). The Crow defendants then raised the affirmative defense of financial inability to comply with the order. (Dkt. #220). The Crow defendants claimed that they did not have funds to repay

3

the excess award and could not reasonably liquidate their assets or borrow the money. (Dkt. #220). They submitted no documentation with their response, other than an affidavit from Marc Crow containing general statements regarding financial inability to comply, but the Crow defendants stated that they would be willing to make a full accounting to the Court, if required. (Dkt. #220). Finally, the Crow defendants argued that the motion for contempt should be denied because plaintiff had suffered no harm as a result of the Crow defendants' failure to comply with the Court's order. (Dkt. #220).

## THE EVIDENTIARY HEARING

During the hearing, Marc Crow, the owner of the Crow defendant entities, testified regarding the receipt of the Commissioners' award. (Dkt. #241, Hearing on Motion for Contempt, Marc Crow). Mr. Crow testified that he knew the award was temporary and subject to adjustment, but he understood that there were no restrictions on the use of the money. Id. Mr. Crow then testified about the contents of bank statements for Crow Real Estate,[3] beginning with February 2010, the month before the Commissioners' award was disbursed. (Dkt. #241, Hearing on Motion for Contempt, Defendants' Exhibit 1). Mr. Crow testified, and the bank statements indicate,[4] that Crow Real Estate received the disbursement of the Commissioners' award – $1,259,443.70 – in March 2010. Id.

---

[3] The Crow defendants did not present any bank statements for defendant Crow Enterprises during the hearing. Those bank statements were submitted after the hearing to supplement the record. The bank statements encompass activity on three accounts: (1) a checking account at Arvest Bank for the period between January 1 and September 30, 2012; (2) a checking account at Security Bank and Trust in Miami, Oklahoma, for the period between January 1 and September 30, 2012; and (3) a checking account at Security Bank in Tulsa, Oklahoma, for the period between July 1 and September 30, 2012. The bank statements were submitted to the Court without being filed because defendant Crow Enterprises represented that the bank statements contained confidential information.

[4] The bank statements do not identify the payees on most of the debits or the source of the deposits. Instead, most of the debits are identified by check number. (Dkt. #241, Hearing on

4

Mr. Crow then used the disbursement to pay outstanding debts and other expenses. (Dkt. #241, Hearing on Motion for Contempt, Marc Crow and Defendants' Exhibit 6). He sent $668,875.63 to Crow Enterprises for operating capital for the business, Turnpike Chrysler Jeep Dodge. Id. Mr. Crow used the remaining funds to repay personal loans, including two loans from relatives, in the amount of $269,000; attorney fees in the amount of $64,000; architect fees in the amount of $25,000; appraisal fees in the amount of $25,000; a condominium assessment of $30,000; and repayment of money that he had loaned to the Crow defendants from his 401k account in the amount of $72,500. Id. By Mr. Crow's testimony and with Defendants' Exhibit 6, the Crow defendants contend that they have accounted for $1,154,375.63 of the disbursement, leaving only $105,943.70 for which there is no accounting. Mr. Crow testified that he did not have promissory notes for most of the loans he re-paid using the disbursement. (Dkt. #241, Hearing on Motion for Contempt, Marc Crow).

Mr. Crow also testified that Crow Enterprises and Crow Real Estate often operated together. Id. Crow Real Estate's only real estate holding is the property on which Crow Enterprises operates the car dealership. Id. Crow Enterprises leases the property from Crow Real Estate. Id. Crow Real Estate also occasionally makes short-term loans to Crow Enterprises, which are usually re-paid in three days. Id. Mr. Crow manages both entities. Id.

Mr. Crow then testified that he had made attempts to borrow the money to comply with the Court's order. Id. Mr. Crow spoke with the loan officer at two banks, but he did not submit any applications because he had been told that his application would be rejected.[5] Id. He testified

---

Motion for Contempt, Defendants' Exhibit 1). The bank statements include copies of a number of canceled checks, some of which can be identified and explained through Mr. Crow's testimony, but the documentation itself contains no real explanation of the expenditures.

[5] Mr. Crow applied for, and received, a $350,000.00 loan from Security Bank in March 2012, shortly before the Court issued the order requiring repayment of the disbursement. (Dkt. #241,

that, due to the condemnation proceeding, he was unable to negotiate any loans, but he believes that he will be able to borrow money after the jury trial. Id. Mr. Crow stated that he had lost 1.88 acres of display space, that customer traffic had dropped as a result of the construction, and that his competitors had hired his employees by convincing them that the dealership was in financial trouble. Id. Mr. Crow also submitted the 2011 federal tax return for Crow Enterprises, which show a loss of $43,760.00. (Dkt. #241, Hearing on Motion for Contempt, Defendants' Exhibit 5). He also testified that although the dealership's financial statement show assets of approximately $2.5 million, that figure includes the value of the inventory and does not include any liquid assets that could be used to comply with the Court's order. (Dkt. #241, Hearing on Motion for Contempt, Marc Crow). Mr. Crow did admit that he had been making payments on the new mortgage from Security Bank, issued in March 2012, and he also stated that he had begun making payments to defendant Small Business Administration. Id. He is not making payments on the mortgage to defendant Arvest Bank. Id.

Following the presentation of Mr. Crow's testimony and the accompanying exhibits, plaintiff argued that the Crow defendants had failed to meet their burden. (Dkt. #241, Hearing on Motion for Contempt, Kelly F. Monaghan). The Crow defendants requested the opportunity to present additional financial records for defendant Crow Enterprises. (Dkt. #241, Hearing on Motion for Contempt, Robert Nichols). The Court permitted the Crow defendants to submit the additional evidence and allowed the parties to submit supplemental briefing. (Dkt. ##241,242).

Plaintiff argues that the Crow defendants have failed to meet their burden to demonstrate a financial inability to comply. (Dkt. #244). The documentation submitted, plaintiff contends, falls short of a "full and complete picture" of the Crow defendants' finance. (Dkt. #244). Plaintiff

---

Hearing on Motion for Contempt, Plaintiff's Exhibit 1). Mr. Crow testified that the Security Bank loan was used to pay off a credit line, with defendant Crow Enterprises receiving the remaining funds. (Dkt. #241, Hearing on Motion for Contempt, Marc Crow).

cites to a number of large expenditures from the Crow Real Estate account, for which Mr. Crow provides no explanation. (Dkt. #244). Plaintiff also argues that the evidence fails to properly document the ways in which the Crow defendants spent the Commissioners' award, also indicating that the Crow defendants have failed to meet their burden. (Dkt. #244). With respect to defendant Crow Enterprises, plaintiff contends that the bank records consistently show a positive daily balance and significant deposits but fail to demonstrate the purpose of any withdrawals and expenditures. (Dkt. #244). Finally, plaintiff claims that Mr. Crow has failed to make adequate attempts to obtain funding from other sources in order to comply with the Court's order. (Dkt. #244).

The Crow defendants argue that the financial documentation they submitted is sufficient to establish an inability to pay. (Dkt. #247). They also imply that repayment of the entire disbursements is an unexpected hardship, as the Crow defendants can expect to retain some of that money even if the jury verdict requires them to repay a portion of the Commissioners' award. (Dkt. #247). They also state that plaintiff bears some responsibility for the Crow defendants' position, as plaintiff has maintained inconsistent positions that have caused the Crow defendants to incur additional expenses. (Dkt. #247).

## ANALYSIS

The court's civil contempt power derives from 18 U.S.C. § 401. Civil contempt is remedial in nature and is appropriate to "coerce the defendant into compliance with the court's order, and[/or] to compensate the complainant for losses sustained." <u>United States v. United Mine Workers of America</u>, 330 U.S. 258, 303-04 (1947) (citation omitted). The party seeking contempt findings must demonstrate by clear and convincing evidence: (1) the existence of a valid court order; (2) the opposing party's knowledge of the court order; and (3) the opposing

party's disobedience of the court order. See Reliance Ins. Co. v. Mast Const. Co., 159 F.3d 1311, 1315 (10th Cir. 1998).

**Validity of the Order**

The Crow defendants appear to have abandoned this argument in order to focus solely on their affirmative defense; however, they did argue, in their response to the motion for contempt, that this Court's order requiring the return of the excess award and the deposit of the remaining funds was not a valid order. (Dkt. #220). The Crow defendants claimed that the order was without legal basis because it was an interlocutory order not permitted within the constitutional and statutory schemes for condemnation proceedings. (Dkt. #220). Because this issue was raised in the response, the Court will address it.

Civil contempt orders rise and fall with the validity of the underlying order. See United Mine Workers, 330 U.S. at 294-95. Civil contempt orders are mutable, in this sense, due to the nature of civil contempt, which is not punitive. See Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624, 647 (1988). A party who challenges a civil contempt order on appeal is entitled to raise a challenge to the legal validity of the underlying order, but only as part of an appeal of the underlying order following final judgment. See Consumers Gas & Oil, Inc. v. Farmland Indus., Inc., 84 F.3d 367, 369-70 (10th Cir. 1996).

The rules for consideration of the validity of the underlying order at the trial level, however, are limited to "technical" considerations, such as jurisdiction. See, e.g., United States v. Rylander, 460 U.S. 752, 756-57 (1983). See also United Mine Workers, 330 U.S. at 293 (citations omitted) (holding that "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings"). In Rylander, the Supreme Court rejected the Court of Appeals' ruling that a party

"was free to relitigate the question [at issue in the underlying order] in the contempt proceeding." Id. at 756. The Supreme Court, quoting Maggio v. Zeitz, 333 U.S. 56, 59 (1948), held that "[i]t would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." Rylander, 460 U.S. at 756; see also Local 28 of Sheet Metal Workers' Intern. Ass'n v. E.E.O.C., 478 U.S. 421, 441 n.21 (1986) (quoting Maggio, 333 U.S. at 59) (additional citations omitted).

In this case, the Crow defendants' only challenge to the validity of the underlying order is to raise the same arguments they raised when the motion to return the excess funds was originally litigated. Those arguments cannot be used to successfully challenge the validity of the Court's order in this context. Accordingly, plaintiff has made a *prima facie* showing that a valid court order exists.

**The Crow Defendants' Ability to Pay**

Plaintiff correctly states that, having demonstrated a *prima facie* case for contempt, the Crow defendants bear the burden of demonstrating that they are financially unable to comply with the Court's order. See Rylander, 460 U.S. at 757. This burden is difficult to meet because "an alleged contemnor must prove 'plainly and unmistakably that compliance is impossible.'" Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995) (citation omitted). Proof of the inability to comply must be made "categorically and in detail." Rylander, 460 U.S. at 758. *Ex parte* affidavits, such as the one Mr. Crow submitted in response to the motion for contempt, are insufficient to satisfy the burden. See id.

Both parties cite to AV by Versace v. Gianni Versave, S.p.A., 279 F.Supp.2d 341, 346 (S.D.N.Y. 2003), which sets forth in detail the type of accounting that a court requires in order to

determine whether a party has met its burden to show that it cannot comply with an order. The list of documents submitted in that case included tax returns, balance sheets, and bank records. See id. at 346. The district court rejected the tax returns because they were unsigned and the bank records because they were not submitted "in an orderly fashion." Id. at 348. Ultimately, the district court held that the contemnor had failed to meet his burden. See id.

A.V. by Versace, while not binding on the Court, provides a clear example of the evidence necessary to establish financial inability to comply with an order. In this case, as in A.V. by Versace, the Crow defendants have submitted tax returns, balance sheets, and bank records. Based on the reasoning in A.V. by Versace, the Court finds that these documents alone are insufficient to establish that the Crow defendants have met their burden because the documents fail to establish a clear, detailed picture of the Crow defendants' finances. The Court's analysis follows.

Although much of the testimony and documentation focused on the manner in which the Crow defendants spent their portion of the Commissioners' award, the Court finds that, aside from the fact that the money was spent, this evidence is irrelevant to the question of the Crow defendants' current financial ability to comply with the Court's order. While plaintiff questioned the Crow defendants' decision to pay off personal loans and emphasized the fact that the Crow defendants could not produce any promissory notes or other documentation to establish those debts, the Court is unconcerned with those facts. Nothing in the constitutional and statutory provisions for condemnation proceedings prevents a property owner from receiving the Commissioners' award and using it in any manner he, she, or it sees fit, whether the use of the money is prudent or frivolous.

Instead, the Court is more concerned with the financial information that demonstrates the Crow defendants' current financial situation (and their financial situation at the time of the underlying order) and their ability to repay the Commissioners' award while still maintaining their day-to-day operations. In this respect, the Crow defendants have clearly failed to establish their burden of proof. The bank records appear to establish that Crow Enterprises is currently operating at a loss, as evidenced by the steady decrease in its bank account balances.[6] This conclusion is bolstered by the 2011 tax return, which also shows a net loss of $43,760.00 for the year (the Court rejects the tax return because it is unsigned). See AV by Versace, 279 F.Supp.2d at 348; (Dkt. #241, Hearing on Motion for Contempt, Defendants' Exhibit 5). However, the financial statement establishes that Crow Enterprises has significant net worth. (Dkt. #241, Hearing on Motion for Contempt, Defendants' Exhibit 4). Mr. Crow testified that most of the assets were non-liquid, namely the vehicle inventory. (Dkt. #241, Hearing on Motion for Contempt, Marc Crow). The financial statement undercuts that testimony at least in part. The financial statement accounts for both the value of the inventory, which is an asset, as well as the "floorplan loan" that finances the inventory. (Dkt. #241, Hearing on Motion for Contempt, Defendants' Exhibit 5). Defendant Crow Enterprises has equity of approximately $130,000 in its inventory. Id. More importantly, the financial statement demonstrates that defendant Crow Enterprises holds $98,531 in "cash and equivalent" as well as $811,823 in "working capital." Id. By definition, these assets are either liquid or may be quickly converted to cash to cover the dealership's obligations.

The analysis of defendant Crow Real Estate's financial information is less involved. Mr. Crow testified that defendant Crow Real Estate's only holding is the subject property. (Dkt.

---

[6] The bank statements for Crow Enterprises are the documents submitted after the hearing to supplement the record.

11

#241, Hearing on Motion for Contempt, Marc Crow). That property is encumbered by the Security Bank Mortgage. (Dkt. #241, Hearing on Motion for Contempt, Plaintiff's Exhibit 1). Defendant Crow Real Estate has also begun repaying the loan to defendant Small Business Administration, which had to return its portion of the Commissioners' award to plaintiff and the Court. (Dkt. #241, Hearing on motion for Contempt, Marc Crow). Mr. Crow testified to no other obligations with respect to the property and stated that defendant Crow Real Estate received monthly lease payments from defendant Crow Enterprises. Id. Based on this testimony, defendant Crow Real Estate should be solvent, yet the bank statements indicate that, in the months since the Court's order, defendant Crow Real Estate has maintained either a negative balance or a balance of only a few hundred dollars. (Dkt. #241, Hearing on Motion for Contempt, Defendants' Exhibit 3). And, Mr. Crow offered no explanation for the large checks written in April, May, and June 2012. Id.

Based on this information, while the Court is satisfied that the Crow defendants cannot fully comply with the Court's order, they maintain the financial ability to partially comply with the Court's order. Yet, the Crow defendants made no effort to comply with the Court's order at all. See In re Resource Technology Corp., 624 F.3d 376, 387 (7th Cir. 2010) (finding a party in civil contempt where the party made "no effort at even partial compliance with the court's order" because financial inability to pay requires a "complete inability" to pay) (quoting Huber, 51 F.3d at 10). In this case, the Crow defendants made no real effort to borrow the money to repay the excess award, and they chose not to make even small partial payments. As importantly, the Crow defendants requested, and received, a lengthy extension of time to comply with the Court's order, yet they took no steps to be proactive and communicate with the Court regarding their financial situation.

For these reasons, the Court finds that the Crow defendants are in contempt for their failure to comply with the Court's order and have been in contempt since August 23, 2012.

**Penalty**

Civil contempt can serve one of two purposes: "(1) to compel or coerce obedience to a court order . . . ; and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance." O'Connor v. Midwest Pipe Fabrications, Inc., 972 F.2d 1204, 1211 (10th Cir. 1992). "Where the purpose of the sanction is 'coercive,' the court must consider 'the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" O'Connor, 972 F.2d at 1211 (quoting United Mine Workers, 330 U.S. at 304). The court should also use "the least possible power adequate to the end proposed." Spallone v. United States, 493 U.S. 265, 280 (1990).

The State implies that any sanctions for contempt should be paid to the State as compensation for its inability to use the public funds tied up as a result of the Crow defendants' inability to pay. (Dkt. #202). In order to be eligible for compensation, however, "'the amount of the fine must be based upon the complainant's actual losses sustained as a result of the contumacy.'" O'Connor, 972 F.2d at 1211 (citations omitted). If the State cannot demonstrate with specificity the amount of loss it has sustained as a result of its inability to use the excess funds, "'any sum awarded by the court [would be] speculative and therefore arbitrary.'" Id. (citation omitted). Plaintiff acknowledged at the hearing that its only harm has been loss of the use of the money.

Based on the foregoing, the Court finds that the penalty for civil contempt should be coercive in nature. At the hearing, the Court suggested, and counsel for the Crow defendants

agreed, that a reasonable interest rate would be an appropriate penalty. The Court finds that the prime rate, which currently stands at 3.25%, is reasonable.

## CONCLUSION

For the foregoing reasons, the Court finds that the Crow defendants are in contempt of the Court's order, (dkt. #193), effective August 23, 2012. The Crow defendants are hereby **ORDERED** to pay to the Court Clerk penalties at the annual rate of 3.25% on both the $857,314.52 ordered to be paid to plaintiff as reimbursement for the excess award and on the $402,129.18 ordered to be re-deposited with the Court. (Dkt. #193). The interest rate shall accrue on a monthly basis, prorated from August 23-31, 2012, shall be simple and not compounded, and shall continue to accrue until such time as the Crow defendants can establish that they have begun to comply with the Court's order through a payment plan or some other financing arrangement. Interest on the amount owed to plaintiff shall be paid to plaintiff; interest on the amount to be re-deposited with the Court Clerk shall be paid to the Court Clerk.

Ordered this 19th day of November, 2012.

_____
T. Lane Wilson
United States Magistrate Judge